ST. PAUL, J.
 

 In December, 1928, plaintiff and his wife were guests at defendant’s hotel. The wife withdrew from her bank box and deposited with the hotel, two diamond rings of the value of $2,500. The hotel had an iron safe with one general compartment, in which its own cash and valuables were kept, and ten individual lock boxes. At the time of the deposit, the ten individual lock boxes were in.use by other guests, and hence the rings were sealed in an envelope, for which.a receipt was given, and placed in the general compartment of the safe.
 

 Thereafter no further thought was given to the rings by either plaintiff or defendant, and they remained as deposited until six months thereafter.
 

 One night in July five masked bandits, armed with pistols and shotguns, entered the lobby and office of the hotel, where the night clerk was busy with his books and cash, and under threats of death forced the night clerk and night elevator man to face the wall whilst they rifled the safe of its contents. Incidentally, they also overpowered and disarmed a police officer who happened to come in whilst they were thus occupied.
 

 At the time of the robbery the outer doors of the safe were pushed to, but not locked; and on this circumstance plaintiff relies'to recover from defendant the value of the rings thus deposited, claiming that the safe was not properly protected by locking, but negligently left open at an unreasonable hour of the night.
 

 The trial judge held with him, and defendant has appealed;
 

 I.
 

 The law of Louisiana requires that an innkeeper provide “an iron chest or other safé deposit” for the valuables belonging to his guests and deposited with him. But it does not require that each guest be furnished with an individual lock box; and where such are in use in the more pretentious hotels, it is for their own protection against the fraud of their guests, and not for the protection of the
 
 *281
 
 guests themselves, as to whom the innkeeper is always liable except in certain contingencies provided for by law. Hence,' the fact that the rings were not kept in an individual lock box has no bearing whatever on this case:
 

 II.
 

 Moreover, even a casual reading of the statute, which requires such iron chest (Act No. 5 of 1860, now sections 1701, 1702, Rev. Stat. 1870, Rev. Civ. Code, arts. 2968, 2969), shows that this requirement of the law is not one for the further protection of the guest, hut as a means of protection to the innkeeper against the carelessness of guests, upon notifying them that, unless their valuables be left with the landlord or his clerk, the landlord will not be responsible for such as may be abstracted or lost from the hotel.
 

 Thus, the statute (as now incorporated in the Revised Civil Code), reads as follows:
 

 “Art. 2968. Every landlord or keeper of a public inn or hotel, shall be required to provide with an iron chest or other safe deposit for valuable articles belonging to his guests or customers, and each landlord or hotel keeper shall keep posted upon his doors and other public places in his house of entertainment, written or printed notices to his guests and customers that they must leave their valuables with the landlord, his agent or clerk, for safe keeping, that he may make safe deposit of the same in the place provided for that purpose.
 

 “Art. 2969. Every landlord, hotel or inn keeper who shall comply with the requirements of the preceding articles, shall not be liable for any money, jewelry, watches, plate, or other things made of gold or silver, or of rare and precious stones, or for other valuable articles of such description as may be contained in small compass, which may be abstracted or lost from any such public inn or hotel, if the same shall not be Ieft with the landlord, his clerk or an agent, for deposit, unless such loss shall occur through the fraud or negligence of the landlord, or some clerk or servant employed by him in such inn or hotel; provided, however, that the provisions
 
 ■of
 
 this article shall not apply
 
 to
 
 a wearing watch, or such other articles of jewelry as are ordinarily worn about the person.”
 

 III.
 

 In other respects the liability of an innkeeper in this state is this:
 

 .R. O. O. art. 2966. “An innkeeper is responsible for the effects brought by travelers, even though they were not delivered into his personal care, provided, however, they were delivered to a servant or person 'in his employment.”
 

 R. C. C. art. 2967. “He is responsible if any of the effects be stolen or damaged, either by his servants or agents, or by strangers going and coming in the inn.”
 

 But there is this limitation upon the liability of an innkeeper in this state, which was unknown to the common law, where not modified by statute, that:
 

 R. O. C. art. 2970. “He is not responsible for what is stolen by force and arms, or with exterior breaking open of doors, or by any other extraordinary violence.”
 

 For at common law, “the preponderating weight of authority, from the time of the decision in Calye’s Case, 8 Coke, 32, * * * is in favor of the rule that he [the innkeeper]
 
 *283
 
 is * * * an insurer * * * against everything but the act of God, or the public enemy, or the neglect or fraud of the owner of the property, * * * [and hence] liable for a loss occasioned * * * [even] by robbery or burglary from without, * * * or by rioteers or mobs.” Pinkerton v. Woodward, 33 Oal. 557, 91 Am. Dec. 657; citing 1 Parsons on Contracts, 623, and other authorities.
 

 IV.
 

 As we have said, the landlord is not obliged to furnish individual lock boxes for his guests, and there is nothing in the law which requires that his “iron chest or other safe deposit” be burglar proof, or that it be kept locked at all times. Indeed it is quite immaterial,' so far as affects his liability to his guests, whether it be or be not burglar proof, or be or be not locked, when its contents are rifled and abstracted if they be not taken by force. But if they be taken by force, then the statute clearly relieves him of responsibility; and the statute draws no distinction, as to the landlord’s freedom, from responsibility for things taken from him by force, between those things which are and those which are not kept under lock and key. The most that could be said would be that the robber might have more difficulty iii attaining things kept under lock and key than those which are left exposed.
 

 And here we come squarely to the question of negligence vel non on the part of the landlord as an ordinary bailee.
 

 V.
 

 In our opinion it was not negligence to have had the safe open at the hour shown, and whilst the night clerk was in his place and attending to his duties. Hotels are obliged to remain open continuously for the accommodation of their guests and patroti's who arrive and leave at all hours of the day and night. The mere presence of the clerk at his desk near the safe was sufficient to keep off sneak thieves and the like, and some force or show of force (which amounts to the same), would have been needed to attain those things which were in his care and under his view. And the law draws no distinction as to the degree of force necessary to relieve the landlord of responsibility. It is true that it would have been negligence for the clerk to leave his post and allow the safe to stay unwatched whilst it remained unlocked, and thus accessible to some sneak thief or other small depredator; but here the negligence of the clerk would have been entirely beside the question, since the landlord would have been ■liable in any event; for the things would not have been taken from him by force.
 

 VI.
 

 The trial judge thought that it was negligence for the clerk to have left the safe unlocked at the “unreasonable hour” of 3 a. m. In this he seems to have followed Pinkerton v. Woodward, 33 Cal. 557, 91 Am. Dec. 657, supra. In that case an hotel clerk was knocked down and the safe robbed at 3 o’clock one morning. At the time of the theft, the combination lock of the safe was not turned on, though, other than this, all usual and necessary precautions seemed to have been adopted for the safety of the property contained in the safe. The court thought the jury were justified in finding a case of negligence. But this was obiter dictum, for the ratio decidendi of the court was the rule of the common law above stated, which pre
 
 *285
 
 vailed in California and had not been modified by statute. Cf. Mateer v. Brown, 1 Cal. 221, 52 Am. Dec. 303.
 

 Decree.
 

 For the reason assigned the judgment appealed from is reversed, and it is now ordered that plaintiff’s demand be rejected at his cost in both courts.