326 So.2d 893 (1976)
C. H. BROOKSHIRE, Plaintiff-Appellant,
v.
Severin L. BROUSSARD et al., Defendants-Appellees,
Lormand Construction Co., Inc., Intervenor-Appellee.
No. 5320.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
*894 Deshotels & Deshotels by O. H. Deshotels, Jr., Kaplan, La. for plaintiff-appellant.
Toxie L. Bush, Jr., Abbeville, for defendants-appellees.
Before HOOD, GUIDRY and PETERS, JJ.
HOOD, Judge.
Charles H. Brookshire instituted this suit against the heirs of Thurman Broussard, deceased, for amounts alleged to be due him on two promissory notes executed by the decedent, and for judgment recognizing a special mortgage which secures the payment of one of the above notes. Defendants filed exceptions of prescription and peremption, alleging that they have been released from liability on said notes by the prescriptions of five or ten years, and that the above special mortgage has perempted and is no longer enforceable because of plaintiff's failure to reinscribe it timely.
Lormand Construction Co., Inc., intervened, alleging that it has purchased the tract of land affected by the above mortgage. As intervenor, it filed exceptions of prescription and peremption, based substantially on the same grounds as those urged by defendants.
After a hearing, judgment was rendered by the trial court in favor of defendants and intervenor, sustaining the exceptions of prescription and peremption filed by said parties, dismissing plaintiff's suit, and ordering that the above mortgage be cancelled and erased from the mortgage records of Vermilion Parish. Plaintiff Brookshire appealed. Lormand Construction Company answered, claiming damages for a frivolous appeal.
Several issues are presented, the principal one being whether the indebtedness allegedly owed to plaintiff by defendants has prescribed. In order to resolve that issue, it is necessary to determine whether the prescription of five years or that of ten years is applicable, and whether the running of prescription has been interrupted.
Plaintiff is the holder of two promissory notes, both of which were executed by the decedent, Thurman Broussard, and are made payable to the order of "Holder or Holders." One of those notes is for $2,500.00, and the other is for $450.00. Plaintiff seeks to recover the amounts alleged to be due on both of those notes.
The note for $2,500.00 is dated October 16, 1961, and is payable in monthly installments of $50.00 per month, beginning November 16, 1961. That note is paraphed for identification with, and it is secured by, an Act of Special Mortgage, executed by Thurman Broussard, in favor of "Holder or Holders," affecting a 5-arpent tract of land in Vermilion Parish. The mortgage is dated of even date with the note, and it was recorded originally in the mortgage records of Vermilion Parish on October 17, 1961. The mortgage was reinscribed in the mortgage records of that parish on September 4, 1974. The maker, Thurman Broussard, was single, or unmarried, at the time he executed the above note and mortgage.
Five payments of $50.00 each have been made on that note, the last such payment having been made on March 27, 1962. *895 After the last of said payments was made, there remained a principal balance of $2,250.00 due on the note.
The $450.00 note is an open or unsecured promissory note. It is dated December 26, 1961, and is payable on demand. No payments have ever been made on that note, and the indebtedness evidenced by it has never been acknowledged by the maker or his heirs, and neither the maker nor anyone else has promised to pay it.
Thurman Broussard died intestate on March 27, 1962, leaving as his sole survivors his widow (Jo Ann Roy), his father and mother, his two brothers and his two sisters. Substantially all of the property left by the decedent belonged to his separate estate, and the indebtedness which was or may have been due on the above described $2,500.00 promissory note was a debt of his separate estate. In 1963, the above survivors of the decedent filed a joint petition in the trial court, seeking a judgment recognizing them as the sole surviving heirs of Thurman Broussard, and putting them in possession of all property left by him, in accordance with a compromise agreement which had been entered into by those parties.
A detailed descriptive list of the property and effects left by the decedent was attached to the above joint petition and was filed in the succession proceeding. The 5-arpent tract of land which was mortgaged to secure the payment of the $2,500.00 note was listed in the above document at belonging to the separate estate of the decedent. The descriptive list of property and effects also includes, under the heading of "Liability and Expenses," the following indebtedness: "MortgageC. H. Brookshire $3,000.00." The $450.00 note was not listed as a liability or debt of the succession.
The petitioners in that succession proceeding alleged that ". . . the respective parties thereto, with the exception of Jo Ann Roy, have agreed to assume all indebtedness and debts of the decedent herein.. . ."
There also was attached to the above joint petition a compromise agreement which had been entered into in 1963 by the decedent's surviving widow, his father and mother, and his brothers and sisters. Most of the parties signed that agreement on May 13, 1963, and for the purpose of this suit we regard that compromise agreement as having been signed on that date. By that document the parties agreed that the 5-arpent tract of land left by the decedent belonged to his separate estate, and that it was to be inherited solely by his father and mother and by his brothers and sisters. The compromise agreement also provided:
"The parties do by these presents agree and declare that the appearers, with the exception of Jo Ann Roy, do by these here presents hereby expressly assume and agree to pay all of the indebtedness existing on the above described property and all other indebtedness legally due by the deceased which indebtedness is listed as follows:

* * * * * *
"A special mortgage dated October 16, 1961 in favor of Holder or Holders and against Thurman Broussard in the amount of $2,500.00 recorded in Mortgage Book 404 at Page 275 of the Recorder's Office of Vermilion Parish, Louisiana."
Although the agreement describes the indebtedness as a "special mortgage," we think the parties clearly intended to assume and agree to pay the above described $2,500.00 promissory note, dated October 16, 1961, which was secured by a special mortgage.
The $450.00 note which plaintiff seeks to collect here was not listed in that compromise agreement as a debt assumed by defendants.
Pursuant to all of the above pleadings, a judgment was rendered by the district court on August 12, 1963, recognizing the decedent's father and mother and his *896 brothers and sisters as owners of the above 5-arpent tract of land. That judgment also decrees "that the surviving parents and brothers and sisters of the deceased pay all indebtedness debts of the deceased. . . ."
Both of the above described notes were filed in evidence. There are no endorsements on the $450.00 note. On the back of the $2,500.00 note, however, there appears a statement or acknowledgment, written by typewriter, which reads as follows:
"We the undersigned being the heirs of Thurman Broussard do hereby acknowledge that there is a principal balance of $2250 due on this note plus interest from 11-16-61 to date 11-21-66 in the amount of $750.00 or an aggregate of $3000.00 balance due and owing and we hereby waive all prescription and acknowledge the indebtedness due and owing and unpaid."
Immediately under that acknowledgment there are the signatures of the decedent's father and mother and of his two sisters. His father, Severin Broussard, signed the acknowledgment "Individually and as agent and attorney in fact for" the decedent's two brothers. The acknowledgment thus was signed by or in behalf of all of the heirs of Thurman Broussard. Although the acknowledgment was not dated, we agree with plaintiff that it was affixed to the note and was signed on November 21, 1966. Since that time, there have been no other acknowledgments of the note, no payments on the indebtedness and no other promises to pay it.
The decedent's mother, Mrs. Severin Broussard, died some time prior to July 1, 1974, and all of the property left by her, including her interest in the above mentioned 5-arpent tract of land, was inherited by her surviving husband and children. All of her surviving heirs executed a warranty deed, dated July 1, 1974, conveying that 5-arpent tract of land to Lormand Construction Company. That deed was recorded in the conveyance records of Vermilion Parish on July 8, 1974. No mention was made in that warranty deed of the $2,500.00 note which Thurman Broussard had executed in 1961, or of the mortgage executed on the same date which secured that note. There also was no mention in that deed of the $450.00 unsecured note which is being sued upon here.
On September 4, 1974, plaintiff Brookshire reinscribed in the mortgage records of Vermilion Parish the Act of Special Mortgage securing the $2,500.00 note which had been executed by Thurman Broussard on October 16, 1961, and which had been recorded in the mortgage records originally in 1961. The reinscription of that mortgage, of course, occurred more than ten years after the mortgage had been inscribed originally, and it was reinscribed almost two months after the property affected by that mortgage had been sold to intervenor, Lormand Construction Company.
The instant suit was filed by plaintiff Brookshire on October 3, 1974. The defendants are the surviving father and the brothers and sisters of the decedent, Thurman Broussard. Lormand intervened.
Defendants and the intervenor contend that under LSA-C.C. art. 3369 the effect of the registry of the mortgage executed by Thurman Broussard on October 16, 1961, and recorded the next day, ceased and that the mortgage became unenforceable on October 16, 1971, that being ten years after the date of the obligation. They point out that all of the property affected by that mortgage was sold to a third party after its registry became ineffective and before the mortgage was reinscribed. They argue that the mortgage thus can have no effect, even between the parties, and that the reinscription of it in 1974 did not give plaintiff any additional rights under that mortgage. They take the position that the trial judge correctly ordered the original inscription of the mortgage in 1961, and the reinscription of *897 it in 1974, cancelled and erased from the mortgage records of Vermilion Parish.
Plaintiff apparently concedes that the reinscription of the mortgage in September 1974, did not revive the mortgage or cause it to become effective against the property which was sold to Lormand about two months prior to that reinscription. He argues, however, that defendants and intervenor are entitled to have the inscription cancelled only insofar as it affects the 5-arpent tract of land which was sold to Lormand, but that the original inscription and the reinscription of that mortgage should remain on the records for whatever legal effect it may have as to any other property. The record shows that the mortgage did not affect any property other than that which had been sold to Lormand.
We agree with the trial court that the effect of the registry of this mortgage ceased, even against the contracting parties, on October 16, 1971, because of the failure of plaintiff to renew the inscription of that mortgage within ten years, as provided by LSA-C.C. art. 3369. For that reason we find no error in that part of the judgment of the trial court which orders that the original inscription of the mortgage on October 17, 1961, and the reinscription of that mortgage on September 4, 1974, be cancelled and erased from the mortgage records of Vermilion Parish.
We also conclude that since no payments have been made on the $450.00 note, and defendants have never acknowledged or promised to pay it, defendants have been released from liability on the $450.00 note by the prescription of five years. See LSA-C.C. art. 3540. We find no error in the judgment appealed from, therefore, which sustains the prescription of five years filed by defendants to that note.
We turn now to the question of whether the indebtedness evidenced by the $2,500.00 note has been extinguished by the prescriptions of five or ten years.
Article 3540 of the Louisiana Civil Code provides that:
"Actions . . . on all promissory notes, whether negotiable or otherwise, are prescribed by five years, reckoning from the day when the engagements were payable."
According to our computations, the last payment due on the $2,500.00 note became payable on January 16, 1966. Ordinarily, therefore, in the absence of an interruption of prescription, the note must be held to have prescribed on January 16, 1971, that being five years after the date on which the "engagements were payable." Since the note contains an endorsement showing that it was acknowledged on November 21, 1966, it appears on its face that it prescribed five years later, on November 21, 1971.
Plaintiff contends, however, that "this is a suit upon a personal obligation rather than merely a suit on notes." He argues that in the compromise agreement entered into on May 13, 1963, the defendants specifically agreed to pay the indebtedness due on this $2,500.00 note, that that agreement "made the obligation fall under the theory of law of `stipulations pour autrui,' a personal obligation prescriptible by ten (10) years prescription," under LSA-C.C. art. 3544. That article of the Civil Code provides:
"Art. 3544. In general, all personal actions, except those before enumerated, are prescribed by ten years."
Plaintiff's argument is that the compromise agreement entered into on May 13, 1963, between Thurman Broussard's surviving widow, on the one hand, and his blood relatives, on the other, converted the debt theretofore evidenced by the promissory note into a "personal obligation," which is subject to the prescription of ten years under Article 3544 of the Civil Code. He concedes that even under that theory the personal obligation would have prescribed by May 13, 1973, which was *898 before the suit was filed. He argues, however, that the acknowledgment which appears on the back of the $2,500.00 note, made on November 21, 1966, had the effect of interrupting prescription and continuing the personal obligation in effect for another ten years, or until November 21, 1976. Under plaintiff's theory of the case, this suit was instituted within the prescriptive period.
Plaintiff was not a party to the Compromise agreement which was entered into on May 13, 1963, and defendants thus did not promise plaintiff that the $2,500.00 note, or any other indebtedness, would be paid. Plaintiff argues, however, that he nevertheless can maintain an action against defendants on the personal obligation created by the 1963 compromise agreement, because it constituted a `stipulation pour autrui,' and he was made the beneficiary under that agreement.
We find no merit to this argument by plaintiff. In the first place, we have decided that the compromise agreement entered into on May 13, 1963, did not constitute a stipulation pour autrui. The elements essential to constitute a valid stipulation pour autrui were set out in Andrepont v. Acadia Drilling Company, 255 La. 347, 231 So.2d 347 (1969). One of those requirements is:
"The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge . . . ."
In the instant suit no legal relationship of any kind existed between the promisee, Mrs. Roy, and the so-called third party beneficiary, Brookshire. The debt owed by Thurman Broussard on the $2,500.00 note was his separate debt, and the property which was mortgaged to secure the payment of that note was his separate property. Upon his death, his surviving mother and father and brothers and sisters inherited the above property and they alone became obligated to pay that note. The decedent's surviving widow, Jo Ann Roy, was not obligated to pay the note. There did not exist, therefore, a legal relationship between the promisee, Mrs. Roy, and the third person beneficiary, Brookshire, involving an obligation owed by the promisee to the beneficiary, which performance of the promise will discharge.
In Masset v. Carver, 265 So.2d 456 (La.App. 4 Cir. 1972), the Fourth Circuit Court of Appeal held that "For there to be a stipulation pour autrui, there must be an obligation assumed by one for the benefit of a third person," and that "The assumption of a payment of an obligation for which the debtor is initially responsible would not fall within this scope because a third person does not receive any `advantage' (as required by LSA-C.C. art. 1890) that he did not previously enjoy."
We believe the rule applied in Masset, supra, is applicable here. Mrs. Roy did not owe the obligation evidenced by the note to Brookshire, whether she accepted or rejected the community, and the payment of the note thus would not have discharged her from any obligation she owed. Brookshire, who plaintiff contends was the beneficiary, did not receive any advantage from the compromise agreement, because defendants were legally obligated to pay the note when that compromise agreement was entered into, and their promise to pay a debt they already owed did not give the creditor any additional advantage. For these reasons we find that the compromise agreement entered into by the parties on May 13, 1963, did not constitute a "stipulation pour autrui." It thus did not create or cause to exist a separate "personal obligation" which defendants owed to plaintiff, and which was subject to the prescription of ten years.
Assuming, however, that the compromise agreement entered into on May 13, 1963, constituted a valid stipulation *899 pour autrui, or even a promise made by defendants directly to Brookshire, we nevertheless find that the instant suit is an action on promissory notes, rather than on some other type of personal obligation, and that it thus is subject to the prescription of five years provided in LSA-C.C. art. 3540. We have concluded that the $2,500.00 note prescribed, and became unenforceable against defendants, on November 21, 1971, that being five years after it was last acknowledged.
The original indebtedness to Brookshire was represented by the $2,500.00 note and plaintiff seeks to recover amounts alleged to be due on that note. We must regard this action, therefore, as being one on a promissory note, unless the evidence shows that a novation took place, that is, that the obligation evidenced by the promissory note was extinguished and a new obligation was substituted in its place. Under the circumstances presented here, plaintiff cannot have two separate claims against defendants, both for identifical amounts, one on a promissory note and the other on a different kind of personal obligation. Since he argues that "this is a suit upon a personal obligation, rather than merely a suit on notes," we assume that he contends that the promise contained in the 1963 compromise agreement has been substituted for the $2,500.00 note.
Novation is a contract consisting of two stipulations, one to extinguish an existing obligation, and the other to substitute a new obligation in its place. LSA-C.C. art. 2185. Novation may occur, among other ways, when a debtor contracts a new debt to his creditor, which new debt is substituted to the old one, which is extinguished. LSA-C.C. art. 2189. A novation, or the substitution of a new debt for an old one, is never presumed. The intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt. LSA-C.C. art. 2190. The determining factor is the intention of the parties. The intention to novate may be shown by the character of the transaction, and by the facts and circumstances surrounding it, as well as by the terms of the agreement itself.
The evidence in the instant suit convinces us that the parties did not intend for a novation to take place when the 1963 compromise agreement was executed. We do not think they intended by that agreement to extinguish the indebtedness evidenced by the $2,500.00 promissory note, and to substitute in lieu of it the promise contained in the above compromise agreement.
In the first place, there is nothing in the 1963 compromise agreement which shows an intention of the parties to extinguish the $2,500.00 note. That agreement, on the contrary, indicates that the parties assumed and promised to pay that note, and that they did not intend to substitute a new agreement in lieu of it.
The typed statement appearing on the back of the $2,500.00 note, signed on November 21, 1966, recites that the defendants acknowledge the amount due on "this note." The fact that the acknowledgment was typed on the $2,500.00 note itself, that it specifically refers to that note, and that plaintiff retained the note in his possession, indicates that the parties intended that the note was to remain in effect, not that it was to be extinguished.
In the instant suit plaintiff alleges that he is the holder in due course of the $2,500.00 note, and he seeks to recover the amount alleged to be due on that note. He does not allege, and he does not seek to recover on, the 1963 compromise agreement. The allegations contained in his petition thus are not consistent with the position he takes here that this is an action on a personal obligation, rather than on promissory notes. Those allegations also indicate that when the suit was filed plaintiff did not feel that a novation had taken place.
*900 Finally, plaintiff demands a judgment recognizing the special mortgage which secures payment of the $2,500.00 note. If a novation had taken place, with the result that that note was extinguished and the 1963 compromise agreement had been substituted for it, then the mortgage would no longer be enforceable since, the note which it secured would have been extinguished.
After considering all of the evidence, we conclude that the instant suit is an action on two promissory notes, and that the action has prescribed by five years, reckoning from the day when the engagements were payable, as provided in Article 3540 of the Civil Code. It is not a personal action, as that term is used in Article 3544 of the Civil Code, and thus it is not subject to the prescription of ten years, as provided in that article. There is no error in the judgment of the trial court, therefore, which sustains the exceptions of prescription of five years to this action.
Intervenor, Lormand Construction Company, seeks damages for a frivolous appeal. It contends that the only interest which it had in the matter was to obtain the cancellation of the mortgage affecting the property which it purchased from defendants, since no one contends that Lormand is personally liable on the promissory notes sued upon. It argues that the mortgage had perempted because of plaintiff's failure to reinscribe it within ten years, that plaintiff has submitted no evidence in arguments to show otherwise, and that plaintiff's appeal thus is frivolous.
We agree that the effect of the registry of the mortgage clearly had ceased before this suit was filed, and that plaintiff has made no substantial argument to the contrary. The intervenor also filed exceptions of prescription, however, alleging that plaintiff's action to recover judgment against defendants on the promissory notes had prescribed. The trial court rendered judgment in favor of intervenor Lormand, as well as in favor of defendants, decreeing this action on the promissory notes to be prescribed, and dismissing plaintiff's suit. Plaintiff's appeal from that part of the judgment which sustained the exceptions of prescription filed by Lormand, as well as by defendants, was not frivolous. Since his appeal from a part of the judgment rendered in favor of Lormand was not frivolous, the intervenor's demand for damages for a frivolous appeal is rejected.
For the reasons herein set out, the judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.

Affirmed.