MARVIN, Chief Judge.
Applying the law in effect before January 1,1993, we reverse a judgment in favor of the original mortgagor which enjoined the foreclosure on his June 1973 mortgage of an immovable that was not reinscribed in the mortgage records until August 1983, more than 10 years later, and which also ordered the mortgage inscription cancelled from the public records.
The trial court relied on former CC Art. 3369, which provided:
In all cases where mortgages and privileges, heretofore or hereafter recorded, secure the payment of an indebtedness, the whole of which matures less than nine (9) years from the date of the obligation, the registry preserves the evidence of such mortgages and privileges *31 during ten (10) years, reckoning from the date of the obligation.
[[Image here]]
The effect of the registry ceases in all cases, even against the contracting parties, if the inscriptions have not been renewed within the periods of time above provided in the manner in which they were first made.... (Our emphasis),
but failed to consider that article in the light of former CC Art. 3344, which provided that
... neither 'the contracting parties nor their heirs ... can take advantage of the noninscription of the mortgage.
The above articles and others cited herein (Arts. 3342, 3343 and 3365) were repealed by Act 1132 of 1992, which revised the law on the effect and the rank of mortgages. The 1992 Act provides that mortgages created before January 1, 1993 “shall continue to be regulated by the laws in existence before January 1, 1993.” Applying the pre-1993 law here, we refer to the articles as they then read and were then numbered.
PACTS
The debtor’s $40,000 collateral mortgage was executed and recorded on June 13, 1973. The mortgage note, payable on demand to the order of future holder, was pledged to a creditor to secure one or more loans. The creditor reinscribed the mortgage more than ten years later, on August 8, 1983.
In September 1987, the debtor pledged the mortgage note to United Mercantile Bank, an FDIC-insured bank, as partial security for an $83,000 loan, represented by a hand note, payable in monthly installments beginning October 16, 1987. The FDIC, as receiver for UMB, assigned the 1987 hand note, and the 1973 mortgage note securing its payment, to plaintiff, Security National Trust, A Limited Partnership, in December 1990, after UMB’s failure as a bank. At all times referred to herein, the defendant mortgagor owned the mortgaged property.
Security brought the foreclosure action in June 1991, alleging that the debtor’s last payment on the note was made in January 1988. The action on the note was timely under CC Art. 3498, having been brought within five years of the date when payment was due. The debtor sought to enjoin the foreclosure and filed a separate action to have the mortgage cancelled from the public records. The actions were consolidated in the trial court.
DISCUSSION
The failure to reinscribe a mortgage on the records within the 10-year period contemplated in Art. 3369 does not render the mortgage unenforceable as against the mortgagor, but renders the initial inscription of the mortgage in the public records ineffective, primarily as to third persons, such as purchasers of the property or other creditors of the mortgagor. See Schutzman v. Dobrowolski, 191 La. 791, 186 So. 338 (1939); former CC Arts. 3342-3344; and Commerical Nat. Bank v. McDaniel, 156 So. 43 (La.App. 2d Cir.1934). The mortgage then ranks from the date of reinscription rather than from the original recordation date. Commercial Nat. Bank v. McDaniel, supra.
As between the mortgagor and mortgagee, the courts once held that the failure to timely reinscribe might subject the mortgagor to liability for fraud if he mortgaged the property to another without disclosing the first mortgage. Former CC Art. 3365; Shepherd v. Orleans Cotton Press Co., 2 La.Ann. 100 (La.1847).
The inscription produces some effects between the contracting parties. Art. 3329 provides that, if a person who has given a mortgage on his property, takes advantage of the neglect to register the mortgage, and engages the same property afterwards to another person, without informing him of the first mortgage, he shall be considered guilty of fraud, and shall be subject to the damages which the law authorizes in such cases. [This provision later became Art. 3365, which was in effect from 1870-1992.]
After the inscription, he is not liable in damages for giving a second mortgage. At the expiration of ten years, if no re-inscription takes place, his liability re *32 vives, and in that manner, the effect of the first inscription ceases, even against the contracting parties.
2 La.Ann. at 113. Our brackets, paragraphs and emphasis.
See also Executors of Liddell v. Rucker, 13 La.Ann. 569 (La.1858).
About a century later, Schutzman v. Do-browolski, supra, noted the split of authorities or confusion about the law, and squarely held that failure to reinscribe does not render the mortgage unenforceable between the parties, overruling earlier cases that indicated or held that the mortgage was ineffective between the parties if it was not timely reinscribed. 186 So. at 342. Schutzman cited with approval this court’s decision in Commercial Nat. Bank v. McDaniel, supra. We said there:
The primary obligation, the notes, to which the mortgage and vendor's lien were accessory, at no time were prescribed. As long as these notes were kept alive, the accessory obligation securing their payment continued in full force and effect as between the parties, and this without reinscription.
156 So. at 46. Our emphasis.
The mortgagor cites later cases from one appellate circuit reciting circumstances in which a mortgage that was not timely rein-scribed was found ineffective and was ordered cancelled from the public records: Brookshire v. Broussard, 326 So.2d 893 (La.App. 3d Cir.1976); Delta Sec. Bank & Trust Co. v. Byrnes, 415 So.2d 605 (La.App. 3d Cir.1982). We do not follow these eases for two reasons: Each is factually distinguishable because the property in each case had been sold to a third person before the creditor sought recognition of the mortgage against the original debtor. Secondly, the controlling authorities are Schutzman (La.1939), and McDaniel (La.App. 2d Cir.1934), cited supra.
In Brookshire, the debtor’s heirs had sold the property to a third party after the initial inscription period expired. The court found the creditor’s untimely reinscription ineffective against the debtor’s heirs, who were the defendants, and against the purchaser, who intervened in the action, saying, “We agree with the trial court that the effect of the registry of this mortgage ceased, even against the contracting parties, on October 16 1971 [ten years after the date of the obligation], because of the failure of plaintiff to renew the inscription of that mortgage within ten years, as provided by LSA-C.C. art. 3369.” 326 So.2d at 897; our brackets. The Brookshire court cited no case law interpreting Art. 3369.
In Byrnes, supra, the debtor sold the property during the initial 10-year inscription period and the creditor did not timely reinscribe the mortgage. The creditor sued the debtor for judgment on the promissory note and for recognition of the mortgage. The court affirmed a judgment that allowed recovery on the note, but ordered the mortgage cancelled, citing Art. 3369 and Brookshire, supra. The opinion implied, however, that the mortgage would have been enforceable against the original debtor, notwithstanding the untimely rein-scription, if the debtor had not sold the property to a third person. The court quoted from Professor Ralph Slovenko’s Treatise on Creditors’ Rights under Louisiana Civil Law:
“[Article 3369] provides that the effect of the registry ceases, even against the contracting parties, if the inscriptions have not been renewed within the prescribed time periods. Since the effect of registry is notice to third parties, it would follow that the right of the mortgagee to follow the property into the hands of a third person would thus cease. This right of pursuit is one of the major characteristics of the mortgage as a security device; thus, failure to reinscribe might be considered a practical, if not legal extinction of the mortgage. However, the mortgagee, in the absence of a competing third party, would still have the right of the relatively convenient method of execution provided by the device of mortgage. ”
415 So.2d at 606. First emphasis in original; second emphasis added.
The court’s implication in Byrnes is consistent with Schutzman and McDaniel, our authorities cited supra, that better inter *33 pret Art. 3369. These eases were not mentioned in Brookshire.
The debtor in this appeal still owns the property he mortgaged in 1973. The principal obligation has not prescribed. There are no competing creditors involved, as there were in American Fire & Indem. v. Citizen’s Nat. Bank, 499 So.2d 320 (La.App. 1st Cir.1986), writ denied, also cited by the debtor-mortgagor. Neither the record nor the briefs suggest that the debtor mortgaged the property to another during the two months before the mortgage was belatedly reinscribed in the records on August 8, 1983.
Security’s right to bring a foreclosure action against Alexander has not been lost under the circumstances of this case. The mortgage is enforceable against Alexander and is not subject to cancellation from the public records because of the untimely rein-scription. Former CC Arts. 3342-3344, 3365, 3369; Shepherd, McDaniel and Schutzman, all cited supra.
DECREE
We reverse the trial court’s judgment in favor of the mortgagor and hereby render judgment dismissing with prejudice the mortgagor’s demands for injunctive relief and for cancellation of the mortgage. Costs, here and below, are assessed to the mortgagor. We remand to allow the foreclosure action to proceed.
REVERSED, RENDERED AND REMANDED.
APPLICATION FOR REHEARING
Before MARVIN, NORRIS, LINDSAY, STEWART and WILLIAMS, JJ.
Rehearing denied.